Hillsborough
No. 78-269

THE STATE OF NEW HAMPSHIRE

v.

JANET A. BEAULIEU

May 23, 1979

*Thomas D. Rath*, attorney general (*Richard B. Michaud*, assistant attorney general, orally), for the State.

*Tetler & Holmes*, of Hampton, and *Shepcaro & Zinni*, of Boston, Massachusetts (*Marc J. Shepcaro* orally), for the defendant.

DOUGLAS, J. This case requires us to decide whether evidence legally seized in the presence of the defendant in her home pursuant to a search warrant naming her husband may be admitted into evidence at her trial. We hold that the evidence is admissible.

A search warrant was obtained by New Hampshire State Police Detective Corporal Carpenito to search for illegal drugs at the Pelham residence of Lawrence C. Beaulieu. Detective Carpenito knew that Beaulieu's wife, Janet, also resided at the premises. He did not know that Janet Beaulieu was involved in any drug activities. Detective Carpenito obtained the search warrant pursuant to a sworn affidavit presented in Pelham Municipal Court on October 7, 1977. The affidavit stated that Detective Carpenito had received information from a Massachusetts detective who had in turn received information from a confidential informant. The affidavit stated that this informant was known to be reliable and that his information had previously led to the arrest and conviction of three other people. The informant indicated that he had visited the residence of Lawrence Beaulieu on several occasions and that he had observed substances that Beaulieu told him were cocaine and marijuana.

Detective Carpenito and several other officers went to the Beaulieu residence at 6:00 p.m. on October 7, 1977. Janet Beaulieu admitted them to the residence upon seeing the warrant. Throughout the search which followed, Mrs. Beaulieu was seated at the kitchen table surrounded by police while her husband showed the police where various quantities of drugs were hidden.

Both Janet and Lawrence Beaulieu were arrested after the search took place. It was not until after the arrests that they were apprised of their rights against self-incrimination. Mrs. Beaulieu was indicted for possession with intent to sell a controlled drug under RSA 318-B:2 (Supp. 1977). Prior to trial she moved to suppress the evidence seized during the search of her home. The motion to suppress is based on the alleged illegality of the search warrant, her contention that her arrest was not supported by probable cause, and her contention that the evidence was received in contravention of her husband's fifth amendment privilege against self-incrimination. The question of the admissibility of this evidence was transferred to this court without ruling from the superior court by Loughlin, C.J.

The threshold issue in this case is the validity of the search warrant used to search the Beaulieu residence. The defendant argues that the search warrant is defective because the affidavit supporting it is based on insufficiently corroborated hearsay, and because Detective Carpenito did not personally know the informant who provided the information in the affidavit.

■■ When evaluating the constitutionality of a warrant, "the informed and deliberate determinations of magistrates . . . are to be

preferred over the hurried action of officers" acting without warrants. *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932). A search based on a magistrate's determination of probable cause does not require the same standard of reliability as does a warrantless search. *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *citing Jones v. United States*, 362 U.S. 257, 270 (1960).

■■ It is well established that hearsay may be the basis for a search warrant if there is a substantial basis for crediting the hearsay. *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *Jones v. United States*, 362 U.S. at 271. The affidavit need not reflect the direct personal observations of the affiant if the magistrate issuing the warrant is aware of some of the underlying circumstances supporting the affiant's conclusions, and if there is support for the reliability of the informant's information. *Spinelli v. United States*, 393 U.S. 410, 412–13 (1969); *Aguilar v. Texas*, 378 U.S. at 114. These requirements have been met in this case. The affidavit includes a detailed description of the informant's direct observations of illegal drugs on the premises to be searched, and states that Lawrence Beaulieu indicated the exact nature of the drugs.

■ The informant's credibility is substantiated by the fact that he has given information to the police in the past which has led to the arrest and conviction of three persons. The fact that Detective Carpenito received this information from a Massachusetts officer and not from the informant himself does not lessen the reliability of the information. It was entirely reasonable for Detective Carpenito to rely on information from a fellow officer. *State v. Spero*, 117 N.H. 199, 203, 371 A.2d 1155, 1157 (1977); *State v. Hutton*, 108 N.H. 279, 288, 235 A.2d 117, 123 (1967).

■ Although the warrant expressly named Lawrence Beaulieu and did not name the defendant, it authorized the search of the entire premises. There was no search of Mrs. Beaulieu's person; such a search would not have been authorized by the search warrant to search designated premises and a particular individual. *State v. Bradbury*, 109 N.H. 105, 106, 243 A.2d 302, 303 (1968). All evidence seized pursuant to that warrant may be used against the defendant at trial if the requisite showings of relevancy and materiality are made. The State, of course, still has the burden at trial of proving beyond a reasonable doubt that the defendant intended to sell as well as actually possess the drugs. *State v. Fossett*, 119 N.H. 155, 399 A.2d 966 (1979).

■■ The defendant also argues that the illegal substances found in the house should be suppressed, alleging that they were taken in

violation of her husband's fifth amendment rights. The right against self-incrimination provided in the fifth amendment is personal in nature and "does not proscribe [use of] incriminating statements from another." *Couch v. United States*, 409 U.S. 322, 328 (1973). The defendant has no standing to complain about any possible violation of her husband's rights. *State v. Ruelke*, 116 N.H. 692, 693, 366 A.2d 497, 498 (1976); *State v. Fernandez*, 113 N.H. 5, 7, 300 A.2d 55, 56-57 (1973).

██ The defendant also argues that her arrest was not based on probable cause and was therefore improper. She would have us suppress the evidence seized during the search of her house as a fruit of that allegedly illegal arrest. We need not rule on the validity of the defendant's arrest, because the evidence was not seized pursuant to the arrest. Instead, it was seized pursuant to the execution of a valid search warrant.

The exclusionary rule, which the defendant seeks to invoke, was adopted to effectuate the fourth amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961). "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantees of the Fourth Amendment against unreasonable searches and seizures. . . . " *United States v. Calandra*, 414 U.S. 338, 347 (1974) (citations omitted). The police conduct here is lawful; the search and seizure of alleged illegal substances from the Beaulieu residence was made pursuant to a valid search warrant. The evidence seized is therefore admissible against the defendant.

*Remanded.*

All concurred.