Merrimack
No. 82-023

## The State of New Hampshire

v.

## Edgar R. Condict

December 29, 1982

1134

*Gregory H. Smith*, attorney general (*Martin R. Jenkins*, assistant attorney general, on the brief and orally), for the State.

*Edgar R. Condict*, of New London, by brief and orally, pro se.

PER CURIAM. The defendant, in appealing his conviction on a charge of speeding, asserts that the conviction is invalid because: (1) fifty-five miles per hour was not the *prima facie* lawful speed limit on Interstate 89 under RSA 265:60 (formerly codified at RSA 262-A:54) on March 26, 1981, and (2) that the evidence was insufficient

to support the trial court's finding that the defendant had been traveling at an unlawful rate of speed. We affirm.

On March 26, 1981, the defendant, Edgar R. Condict, was charged with the violation of speeding on Interstate 89. RSA 265:60 (formerly codified at RSA 262-A:54). The defendant waived presentation of evidence, pleaded not guilty in Henniker District Court (*Sterling*, J.), and was fined thirty-five dollars, plus a ten-percent-penalty assessment. The defendant appealed, and the case was heard *de novo* by the Superior Court (*Cann*, J.).

At the hearing, the defendant admitted that he was traveling approximately sixty-two miles per hour at the time of the charge, this being in excess of the fifty-five-miles-per-hour limit posted on Interstate 89, which the State claims is the *prima facie* lawful speed limit. The defendant attacks the validity of fifty-five miles per hour as a *prima facie* lawful speed limit on Interstate 89. He argues that under RSA 265:60, II (e) seventy miles per hour is still the lawful limit because, *inter alia*, the fifty-five-miles-per-hour limit was not enacted pursuant to RSA 265:62 (formerly codified at RSA 262-A:56). The defendant presented documentation both in the court below and on appeal in support of his contentions.

■ Contrary to the defendant's assertions, the commissioner of public works and highways lawfully could have established fifty-five miles per hour as the *prima facie* lawful speed limit on the interstate system at the time of the speeding charge against the defendant. RSA 265:60, III authorizes the commissioner, in accordance with RSA 265:62, to alter "[t]he prima facie speed limits set forth in this section." The commissioner could not have lowered the *maximum* lawful speed limit, which RSA 265:60, III still fixes at seventy miles per hour for turnpikes and the interstate system.

■■ RSA 265:60, II(e) makes seventy miles per hour also the *prima facie* limit on the interstate, in the absence of some action by the commissioner, which he took, to lower that *prima facie* limit below seventy. *See* RSA 265:60, III. Simply because the commissioner may not lawfully set the speed limit on the interstate system *above* the seventy-miles-per-hour limit provided in RSA 265:60, II(e), as he can with the other *prima facie* speed limits in that statute, does not justify the conclusion that seventy is not a *prima facie* speed limit. Therefore, the mere coincidence of seventy miles per hour as both the maximum lawful and *prima facie* interstate speed limit does not mean that the commissioner was not authorized to lower the speed limit on Interstate 89 *below* seventy miles per hour.

■ Moreover, we believe that the commissioner had lawfully reduced the *prima facie* speed limit on the interstate system to fifty-five miles per hour on March 26, 1981. The record before us indicates that the traffic investigation required by RSA 265:62, I, before the *prima facie* speed limit could be lowered, had been conducted. The fifty-five-miles-per-hour speed limit on the interstate became effective "when appropriate signs giving notice thereof . . . [were] erected." RSA 265:62, I. The defendant does not contest the fact that signs along Interstate 89 provided him with adequate notice of the fifty-five-miles-per-hour limit. Even though the commissioner originally established the fifty-five *prima facie* limit pursuant to his emergency powers, *see* RSA 541-A:3, II, he was subsequently statutorily exempted from compliance with the State's Administrative Procedure Act, RSA chapter 541-A, when changing speed limits. RSA 541-A:10, IV (Supp. 1981).

■ Furthermore, because no reference is made to a traffic investigation in RSA chapter 541-A, which governs the *procedural* aspects of administrative rulemaking, there is no reason for us to conclude that the results of such an investigation are valid only for the 120-day duration of an emergency rule. We hold that the traffic investigation originally conducted, in order to implement an emergency rule reducing the *prima facie* limit to fifty-five, continued to serve as the legal basis for a fifty-five *prima facie* limit on the day that the defendant was charged with speeding.

■■ Having concluded that the *prima facie* lawful speed limit on Interstate 89 was fifty-five miles per hour on the day that the defendant was charged with speeding, we must determine whether there was sufficient evidence to support the defendant's conviction. The test we follow is that the evidence will be sufficient if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Danskin*, 122 N.H. 817, 818, 451 A.2d 396, 397 (1982); *State v. Renfrew*, 122 N.H. 308, 312, 444 A.2d 527, 529 (1982). When we inquire as to the sufficiency of the evidence, such evidence is viewed in a light most favorable to the prosecution. *State v. Glidden*. 122 N.H. 41, 49, 441 A.2d 728, 733 (1982).

After the defendant's *de novo* trial in superior court, the trial judge found that the defendant had been driving on Interstate 89 at seventy-one miles per hour and, consequently, that he "was operating a motor vehicle . . . at a speed greater than was reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing . . . ." *See* RSA 265:60, I. He was not charged with violating the maximum speed limit. Despite the

radar's one-mile-per-hour margin of error, as conceded by the State, the defendant acknowledges he was still driving in excess of the fifty-five-miles-per hour *prima facie* lawful speed limit and that there was other traffic in the immediate vicinity.

The State must prove all the elements of unreasonable speed beyond a reasonable doubt. RSA 625:10. One way of proving that a defendant was speeding is to introduce *prima facie* evidence, which is evidence in and of itself sufficient to sustain a conviction of the offense charged. *Prima facie* evidence, in effect, merely *permits* the finding of fact asserted; it does not *compel* the trier of fact to find that a defendant is guilty beyond a reasonable doubt.

However overwhelming the evidence may have appeared to the defendant that it was safe for him to drive in excess of the *prima facie* lawful speed limit of fifty-five miles per hour, we cannot say that no rational trier of fact could have found him guilty beyond a reasonable doubt. *State v. Goupil,* 122 N.H. 857, 859, 451 A.2d 1284, 1286 (1982). Of course, the defendant is correct that one traveling on the interstate between the speed of fifty-five miles per hour and seventy miles per hour is not *per se* guilty of violating the law. Therefore, unless and until the legislature reduces the *maximum* speed limit to fifty-five miles per hour, not everyone traveling the interstate at a speed above fifty-five but at or below seventy miles per hour must be found guilty of speeding.

*Affirmed.*